# In the United States Court of Federal Claims

No. 20-895 C
(Filed: November 30, 2023)

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
GEORGE BALDWIN HUTCHINSON,       *
JR.                              *
                Plaintiff,       *
                                 *
                                 *
        v.                       *
                                 *
THE UNITED STATES,               *
                                 *
                                 *
                Defendant.       *
                                 *
                                 *
* * * * * * * * * * * * * * * * *
```

*George Baldwin Hutchinson, Jr.*, *pro se*, of Lithia Springs, GA.

*Michael Duane Austin*, Trial Attorney, Commercial Litigation Branch, United States Department of Justice, of Washington, D.C., for Defendant.

## OPINION AND ORDER

SOMERS, Judge.

Before the Court are the parties' cross-motions for judgment on the administrative record. ECF No. 72 ("Pl.'s MJAR"); ECF No. 77 ("Gov.'s MJAR"). Proceeding *pro se*, Plaintiff's allegations can be difficult to discern, but the Court held oral argument, during which Plaintiff set forth his claims more clearly. Specifically, Plaintiff asserts that:

1. The Department of the Army ("Army") improperly used a 50% disability rating from the Department of Veterans Affairs ("VA") instead of the 70% rating from the Army in determining his combat-related special compensation ("CRSC"). Oral Argument at 20:00-25:00.

2. He is still receiving disability retirement pay at the rank of Captain (O-3) when, since July 2015, he should be receiving disability retirement pay at the grade and rank of Major (O-4). *Id.* at 25:00-33:00.

3. He is eligible for concurrent receipt of disability retirement pay and disability pay because, factoring in leave days accrued pursuant to the Post-Deployment/Mobilization Respite Absence ("PDMRA") program, he believes that he accumulated sufficient years

of service to be eligible for Concurrent Retired and Disability Pay ("CRDP"). *Id.* at 33:00-46:00.

4. He temporarily served at the rank of Lieutenant Colonel and that, pursuant to 10 U.S.C. § 1372(2), his retirement grade should be Lieutenant Colonel rather than Major, *id.* at 47:00-1:02:00, and, taking this argument further, pursuant to 10 U.S.C. § 1372(4), his retirement grade should be Brigadier General. *Id.* at 1:03:20-1:24:00.

The Court has carefully considered the submissions by both parties and the arguments presented at oral argument and finds that Plaintiff is not entitled to any further relief on his claims. Accordingly, for the reasons set forth below, Plaintiff's motion for judgment on the administrative record is denied, and the government's cross-motion for judgment on the administrative record is granted.[1]

## BACKGROUND

A.   **Plaintiff's Military Service, Temporary Disability Determination, and Initial Corrections Board Proceedings**

According to the administrative record, Plaintiff joined the Army in 1994 as a Signal Support Systems Specialist. AR 416, 586. After applying in October 2003, Plaintiff became a Second Lieutenant in the Army's Signal Corps in March 2004 and completed the Signal Officer Basic Course in October 2004. AR 40, 471, 474, 483–98, 501. The Army deployed Plaintiff a number of times from 2004 through 2013. AR at 204–205, 326, 441, 446.

From 2012 to 2013, Plaintiff worked at a training center in Kuwait, AR 41, 348, during which he was recommended for potential promotion to Major, AR 349. Plaintiff applied in September 2012 to the Position Vacancy Board ("PVB"), which is an alternative path to promotion from the standard Promotion Selection Board ("PSB"). AR 54–58, 152–156. As part of his application, Plaintiff submitted documentation that, although still a Captain, he served in a position typically held by a Major. AR 59, 61, 157, 159. However, Plaintiff was ineligible for consideration by the PVB unless he was off active duty within 120 days of the September PVB. ECF No. 73-2 at 2–3. After being given the opportunity to appear before the September PVB, Plaintiff opted ultimately to remain on active duty. *Id.* at 2.

In July 2014, U.S. Army Medical Command retained Plaintiff on active duty. AR 41. By April of 2015, an informal physical evaluation board ("PEB") determined that he was "physically unfit" for service and "recommended a disability rating of 70 percent and placement on the [Temporary Disabled Retired List ("TDRL")] with reexamination during December 2015." *Id.* The PEB found that Plaintiff was 70% disabled from post-traumatic stress disorder ("PTSD") and 10% disabled due to a joint issue in his right hip. AR 289. Plaintiff agreed with the findings and waived his right to have a formal hearing. AR 41.

---

[1] Plaintiff additionally filed a motion for summary judgment, ECF No. 73, which largely reiterates the claims in his motion for judgment on the administrative record. This motion is moot.

In May 2015, after he had been placed on the TDRL, the Army retired Plaintiff effective July 15, 2015. AR 41, 293. Subsequently, in October 2015, Plaintiff's name appeared on the PSB list for promotion to the rank of Major. AR 41, 242, 255. That same month, Plaintiff applied to the Army Board for Correction of Military Records ("ABCMR" or the "Board") "asking that his military records be corrected to reflect a promotion to Major in June 2015, placement on the TDRL at the rank of Major, and retroactive retirement pay at the rank of Major." Gov.'s MJAR at 7 (citing AR 39, 137, 220, 222). Plaintiff claimed that he should have appeared before the PVB in September 2012 while stationed in Kuwait. AR 222. He applied again to the ABCMR in December 2015, adding a claim premised on 10 U.S.C. § 1372. AR 224.

## B. Plaintiff's Retirement Ranking and Permanent Disability Rating

On February 10, 2016, the Army's Human Resources Command ("HRC") provided an advisory opinion explaining that Plaintiff, whom it placed on the TDRL and retired because of physical disability, "could be retired in the next higher grade" if three prerequisites were met. AR 206. Plaintiff did not meet the first of three requirements because his name was "not on an approved [PSB or PVB] promotion list prior to the effective date of his retirement on 15 July 2015." *Id.* Plaintiff was, therefore, not eligible for retirement at the rank of Major according to the advisory opinion. *Id.* After Plaintiff received the advisory opinion, Plaintiff responded on March 22, 2016. AR 215. Plaintiff argued that he was entitled to have his retirement rank corrected to Major based on 10 U.S.C. §§ 1372 and 1375. AR 33–34, 43, 220. On April 10, 2017, the ABCMR denied Plaintiff's request to be retired at the rank of Major. AR 50.

While Plaintiff's retirement rank application to the ABCMR was pending, a PEB found that he was permanently disabled. AR 68–71. Plaintiff appealed this decision on December 10, 2018. *Id.* A week later, the PEB "adhere[d] to the original findings and recommendations of the informal proceedings," and determined that Plaintiff "remain[ed] unfit at 70% permanent disability retirement." AR 89. Furthermore, the PEB explained that his claims regarding concurrent receipt entitlement, the Temporary Early Retirement Authority ("TERA") program, rank and grade determinations, and calculation of active-duty days were outside the purview of the PEB. *Id.* The PEB also recommended that he discuss any further claims with his attorney from the Office of Soldier's Counsel. *Id.* In January 2019, Plaintiff waived his right to a formal PEB hearing through his then-attorney, but nonetheless requested that "his contentions [be] reviewed by the PDA to the extent they are able." AR 163. On August 23, 2019, Plaintiff was removed from the TDRL, and he was medically retired with a permanent disability rating of 70 percent. AR 7–8.

## C. Proceedings in the Court and the Court's First Remand to the ABCMR

On November 13, 2019, Plaintiff submitted a request for reconsideration of the ABCMR's 2017 finding that he was not eligible for promotion in 2015 because he was retired before his name appeared on the promotion list. AR 2–99. After receiving denials from the PEB and the ABCMR, Plaintiff filed the present action on July 4, 2020. *See* ECF No. 1 at 3 ("Compl."). In his initial complaint, Plaintiff sought:

the correction of his military records in the form of back pay – to include back pay at the rank of Major rather than Captain, an adjustment to the calculation of his combat-related special compensation pay, and concurrent receipt of both VA disability and Army retirement pay, as well as correction of his military records to reflect retirement at a higher rank.

Gov.'s MJAR at 9 (citing Compl. at 3, ECF No. 1-1 at 1–2).

On February 17, 2021, the government moved to remand the action back to the ABCMR because of the discrepancy between the Board's 2017 decision, which found that Plaintiff was properly placed on the TDRL at the rank of Captain, and the Army's 2019 decision to remove Plaintiff from the TDRL and place him on the Permanent Disability Retired List ("PDRL") at the rank of Major.  ECF No. 21 at 1–2.  According to the government's motion to remand, "[t]here is no indication in the record of whether his retirement as a major alters the ABCMR opinion denying him any relief."  *Id.* at 2.  Plaintiff joined the government's remand request so that the ABCMR could reconsider his petition given that he was placed on the PDRL at the rank of Major.  *Id.* at 1.

Several days later, the Court granted the motion to remand, directing the ABCMR to complete its review of Plaintiff's case on or before August 23, 2021.  *See* ECF No. 22.  The ABCMR issued its decision on August 19, 2021, affording Plaintiff partial relief, specifically recommending that Plaintiff's records "be corrected to reflect the retirement grade and rank of O-4/MAJ effective 25 September 2015, the date the FY15 Major Army Promotion Selection List was approved, with associated retroactive retired pay."  ECF No. 40-1 at 12.  However, the ABCMR recommended denial of the section of the application that pertained to Plaintiff's request of retroactive promotion to O-4/MAJ because the ABCMR lacked the authority to retroactively promote Plaintiff, as doing so would violate the Appointments Clause of the Constitution.  *Id.* at 11–12.

## D.     Second Remand to the ABCMR

After the ABCMR issued its recommendation, the Court issued an order directing the parties to advise it whether further proceedings were needed after the remand.  *See* ECF No. 41.  The government stated that "correcting [P]laintiff's separation records to reflect a retirement grade of Major/04 effective September 25, 2015, with associated retroactive retired pay, represents a satisfactory disposition of the case."  ECF No. 43 at 1.  Plaintiff disagreed and contended that all of his grievances were not addressed by the ABCMR's decision and that he planned to file a motion for reconsideration.  *Id.* at 1–2.

Plaintiff filed a response on September 27, 2021, detailing his objections to the ABCMR's decision.  *See* ECF No. 44.  On October 28, 2021, the Court again remanded the action to the ABCMR to consider whether Plaintiff was entitled to:

1.     "Backpay at 0-4/MAJ rate" between September 2012 to June 2015;
2.     Backpay for "Retired Grade pay of (LTC) Lieutenant Colonel" under 10 U.S.C. § 1372 and/or 10 U.S.C. § 1375;

3.       Any other payments under 10 U.S.C. § 1372;
4.       Any other payments under 10 U.S.C. § 1375;
5.       A greater percentage of pay than he is currently entitled to.

*See* ECF No. 45 at 1–2.

On March 2, 2022, the government filed a notice with the Court, which attached the ABCMR's February 28, 2022, findings and recommendations. *See* ECF No. 61. The ABCMR concluded that "the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned." ECF No. 61-1 at 7. Specifically, the Board determined that it could not retroactively promote Plaintiff to Major (O-4) beginning in September 2012, *id.* at 5–6; he was not entitled to be retired at the rank of Lieutenant Colonel (O-5), *id.* at 6; he was not entitled to concurrent receipt of both his retired pay from the Army and disability pay from the VA (CRDP), *id.*; and Plaintiff did not demonstrate that his CRSC payments were incorrect, *id.*

After the ABCMR issued this third ruling, the Court asked the parties to report again on whether the remand accorded a satisfactory resolution to the case or if additional proceedings were necessary. *See* ECF No. 62. Unsurprisingly, Plaintiff did not believe that the ABCMR's third ruling provided adequate relief. *See generally* ECF No. 65. The government, on the other hand, believed that Plaintiff was given all relief to which he was entitled and that the case should be dismissed. *See* ECF No. 66.

## E.    Amended Complaint and Cross Motions for Judgment on the Administrative Record

Because Plaintiff did not agree that he had been afforded proper relief, the Court set a schedule, *see* ECF No. 67, and on May 13, 2022, Plaintiff filed an Amended Complaint to attempt to crystallize his remaining claims, *see* ECF No. 70. After the government supplemented the administrative record to include recent documents, *see* ECF No. 71, Plaintiff moved for judgment on the administrative record, *see* ECF No. 72.[2] The government cross-moved for judgment on the administrative record. *See* ECF No. 77.[3]

After the parties had fully briefed the cross motions, the Court scheduled oral argument. *See* ECF No. 98. At oral argument, Plaintiff clarified the claims in his Amended Complaint and motion for judgment on the administrative record. First, Plaintiff claims that the Army improperly used a 50% disability rating from the Veterans Administration ("VA") instead of the 70% rating from the Army in determining his CRSC payment. Oral Argument at 20:00-25:00. Second, Plaintiff contends that he receives disability retirement pay at the rank of Captain when he should have received disability retirement pay at the grade and rank of Major since July 2015.

---

[2] Plaintiff concurrently filed a motion for partial summary judgment wherein he "reassert[ed] his claim of eligibility for concurrent receipt, TERA, and/or 'sanctuary' under 10 U.S.C. § 12686." Gov. MJAR at 12 (citing ECF No. 73 at 13–14).

[3] Between the time that the government filed its cross-motion and the Court scheduled oral argument, Plaintiff filed a flurry of motions and notices. *See, e.g.*, ECF Nos. 81–84, 87–88, 93–95. The Court denied these and other motions and requests by order dated December 13, 2022. ECF No. 96.

*Id.* at 25:00-33:00.  Third, Plaintiff contends that he is eligible for CRDP.  *Id.* at 33:00-46:00.  Fourth, Plaintiff suggests that he temporarily served as a Lieutenant Colonel, and that, pursuant to 10 U.S.C. § 1372(2), his retirement grade should be Lieutenant Colonel.  *Id.* at 47:00-1:02:00.  Finally, Plaintiff takes the previous argument further and suggests that, pursuant to 10 U.S.C. § 1372(4), his retirement grade should be Brigadier General with associated backpay.  *Id.* at 1:03:20-1:24:00.

The government responded to Plaintiff's claims and arguments, generally representing that Plaintiff was receiving all relief to which he is entitled and that the prior ABCMR decisions already addressed all of his claims.  *Id.* at 1:45:00-2:30:00.  After hearing the government's arguments, the Court indicated that it would ask the Army to gather an accounting from the Defense Finance Accounting Service ("DFAS") to determine precisely what payments Plaintiff is receiving.  *Id.* at 2:18:00.  Thereafter, the Court subsequently ordered the government to "file the accounting of Plaintiff's payments," ECF No. 101, which it provided on April 18, 2023, *see* ECF No. 104.

## DISCUSSION

### A.    Legal Standard

The Court may grant a motion for judgment on the administrative record if it determines that a party has met its burden of proof based on the evidence in the record in light of the disputed and undisputed facts.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005); *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).  In considering a motion for judgment on the administrative record in a military pay case, the Court "will not disturb the decision of [a corrections board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)).  It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence."  *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted).  Furthermore, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."  *Dodson v. Dept. of the Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

The Court will set aside a corrections board's decision if a plaintiff can demonstrate that the corrections board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  However, "[w]hen substantial evidence supports a board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result."  *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989) (citing *Holman v. United States*, 181 Ct. Cl. 1, 8 (1967)).  The Court's review "does not require a reweighing of the evidence, but a

determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis omitted).

**B.      Analysis**

**1.      The ABCMR Did Not Err in Concluding that Plaintiff's CRSC Payment Was Properly Calculated**

As a general matter, "even if a veteran qualifies for both retired pay from the Department of the Army and disability benefits from the V.A., the veteran cannot receive the full amount of each because 38 U.S.C. § 5304 prohibits duplication of benefits.  In such a case, the veteran may elect to waive the portion of retired pay that would be duplicative of disability benefits and, thereby, become entitled to receive the disability benefits in addition to the unwaived portion of retired pay." *Burkins v. United States*, 112 F.3d 444, 447 (10th Cir. 1997) (citing 38 U.S.C. § 5305); *Porter v. United States*, 131 Fed. Cl. 552, 561 (2017) ("[U]nder 38 U.S.C. § 5304 and 38 C.F.R. § 3.750, a veteran who is eligible for both military retirement pay and disability compensation must generally waive his military retired pay in order to receive disability compensation.").  However, as part of the Fiscal Year 2003 and the Fiscal Year 2004 National Defense Authorization Acts,[4] Congress enacted two concurrent receipt benefits that allow "certain Veterans to receive some measure of concurrent payments for both their retired military pay and their VA disability compensations.  The two applicable programs are known as Combat Related Special Compensation (CRSC) and CRDP)."  2023 WL 5954989, at *1 (Bd. Vet. App. June 2, 2023).[5]  At issue here is Plaintiff's contention that his CRSC monthly payment was improperly reduced because the DFAS improperly used the VA's disability percentage.  The ABCMR addressed this claim in its February 2022 decision, and it held that no "error or injustice occurred when the applicant's CRSC payments were revised to reflect a VA rating adjustment of his associated combat related disability.  If the applicant finds error in the VA disability rating, the Board recommends the applicant appeal to the VA as the Department of the Army has no authority to correct VA records."  AR 614.

"CRSC serves as a supplemental payment that functionally nullifies the bar on concurrent receipt" of retirement payments and VA disability payments.  *Olive v. United States*, 165 Fed. Cl. 541, 548 (2023).  It provides eligible veterans with "'a cash benefit financially identical to what concurrent receipt would provide' and is generally 'equal to the amount of VA disability compensation that has been determined to be combat related.'"  *Id.* (quoting Kristy N. Kamarck & Mainon A. Schwartz, Cong. Rsch. Serv., R40589, *Concurrent Receipt of Military Retired Pay and Veteran Disability* at 1 (Mar. 25, 2020) ("March 2020 CRS Report")).[6]  Eligibility is

---

[4] National Defense Authorization Act for Fiscal Year 2003, Pub. L. No. 107-314, 116 Stat. 2574–76 (2002); National Defense Authorization Act for Fiscal Year 2004, Pub. L. No.108-136, 117 Stat. 1511–17 (2003).

[5] The National Defense Authorization Act for Fiscal Year 2008, Pub. L. 110-181, 122 Stat. 156 (2007), provided that servicemembers medically retired pursuant to 10 U.S.C. Chapter 61 were eligible for CRSC.

[6] In *Olive v. United States*, Judge Lettow provided a helpful illustration that shows how CRSC allows servicemembers to avoid the full VA waiver:

governed by statute, and "a veteran may obtain CRSC under 10 U.S.C. § 1413a . . . . when he '(1) is entitled to retired pay . . . ; and (2) has a combat-related disability.'"  *Strahler v. United States*, 158 Fed. Cl. 584, 588 (2022) (quoting 10 U.S.C. § 1413a(c)(1)).

Plaintiff contends that the Army erred by reducing his CRSC monthly payment because it used his VA disability rating, which the agency lowered in March 2017.  Initially, when Plaintiff applied to HRC for CRSC on November 18, 2015 "his claim for PTSD was approved for 70 percent effective August 2015."  AR 612.  In October 2019, however, "HRC responded to [Plaintiff] after reviewing his claim for CRSC . . . and adjusted his claim for PTSD to 50 percent, effective 1 March 2017."  *Id.; see also* AR 790–92 (explaining how Plaintiff's CRSC payment was reduced due to the "VA reduc[ing] [Plaintiff's] disability rating [from] PTSD from 70% to 50%.").  According to Plaintiff, DFAS should have used the 70% disability rating that the Army set for purposes of calculating his medical disability benefit.  *See* Pl.'s MJAR at 19 ("My Current Army Disability Percentage is 70%[.]  That is [w]hat CRSC HRC used for my CRSC rating (initially) clearly that is what they should have used instead of the VA rating."); *see also* Oral Argument at 11:30-25:00.

Plaintiff's claim fails because CRSC is calculated using a servicemember's VA disability rating.  *See* DOD Financial Management Regulation Vol. 7B, Chap. 63 §§ 8.1, 8.2, 8.5; *see also* Kristy N. Kamarck, Cong. Rsch. Serv., IF10594, *Defense Primer: Concurrent Receipt of Military Retired Pay and VA Disability* at 1 (Oct. 20, 2022) ("Under CRSC, the retired pay offset still applies to receive VA disability compensation; however, CRSC reimburses the member for some, or all, of the offset.  The amount of CRSC depends on the percentage of the disability that is combat related (CRSC rating) and may not exceed the reduction in retired pay.").  As a result, DFAS had no choice but to reduce Plaintiff's CRSC payment when his VA disability rating was adjusted downward.  *See Porter v. United States*, 131 Fed. Cl. 552, 558 (2017) (finding no jurisdiction but explaining that "[w]ith respect to his combat-related special compensation claim, the [Board for Correction of Naval Records] stated that the reduction from 50% to 40% was required because the VA lowered the rating for one of [his] orthopedic disabilities.  And because CRSC entitlements are based on VA ratings, there was no action the BCNR could take to restore [Mr. Porter's] entitlement to payment of CRSC at the 50% rate.") (internal quotations and citations omitted).

Additionally, because CRSC is a way for servicemembers to avoid the bar on concurrently receiving VA benefits with retirement benefits, the CRSC payment amount

---

For example, under the bar on concurrent receipt, a retiree entitled to $1,500 in retired pay and $1,000 in VA disability pay would waive $1,000 in retired pay and receive the remaining $500 as well as $1,000 in disability pay.  If, however, the Army determines that same . . . retiree is entitled to CRSC for half of the injuries reflected in the $1,000 in VA disability pay, the retiree would receive $2,000 instead — $500 in CRSC plus $500 in retirement pay and $1,000 in VA disability pay.  Because CRSC is assessed and disbursed after the servicemember waives the required amount of their VA benefits, it does not prevent the operation of the bar on concurrent receipt.

165 Fed. Cl. at 549 n.8 (citing March 2020 CRS Report at 5).

logically is tied to the VA's disability rating. Generally, "[a] servicemember is entitled to compensation from the DOD if he is medically retired because a 'physical disability incurred while entitled to basic pay' renders him 'unfit to perform the duties' of his office." *Mazarji v. United States*, 164 Fed. Cl. 298, 308 (2023) (citing 10 U.S.C. § 1201(a)). The Army's system "measures disability for the purpose of determining whether an individual is fit for continued service. If it finds the servicemember is not fit, he is retired or discharged, and the percentage he is assigned reflects deferred compensation for a career of service." *Id.* at 309 (internal marks and citations omitted). On the other hand, the VA disability program "assesses a servicemember's disability to reflect the average loss of earning power over time." *Id.* (internal quotation omitted). In other words, "[a]lthough both the Army and the VA use the VA Schedule for Rating Disabilities, the Army disability rating is intended to compensate the individual for interruption of a military career because of an impairment. The VA awards ratings because a medical condition affects the individual's civilian employment." *Slesinski v. United States*, 34 Fed. Cl. 159, 164 (1995).

Because the two programs serve different objectives, Army and VA disability ratings can differ. Moreover, VA ratings can change over time. While the Army "must determine an appropriate permanent disability rating before the individual can be separated from the service, the VA can evaluate a veteran throughout his or her lifetime, adjusting the percentage of disability." *Id.* Plaintiff received payments in accordance with the appropriate statutory and regulatory schemes; therefore, the Court finds that the ABCMR acted reasonably in rejecting his claim for adjustment of his CRSC monthly payment.[7]

## 2.      Plaintiff's Retirement Benefit Has Been Properly Calculated and Disbursed

As an initial matter, "[t]o receive military disability retirement benefits, a service member determined 'unfit to perform the duties of the member's office, grade, rank, or rating because of a physical disability' must have at least 20 years of service *or* a disability rating greater than 30%." *Kelly v. United States*, 69 F.4th 887, 889 (Fed. Cir. 2023) (citing 10 U.S.C. § 1201(a)). On March 21, 2015, a PEB gave Plaintiff received an initial temporary disability rating of 70%, and he was placed on the TDRL. AR 611. In December 2018, the PEB reconvened and determined that Plaintiff's 70% disability rating should be made permanent. AR 612. Neither party contests Plaintiff's entitlement to permanent disability benefits nor his 70% disability rating.

Instead, Plaintiff appears to claim that he has not received the appropriate retirement pay at a level reflective of his retired pay grade, Major (O-4). Pl.'s MJAR at 8, 12; Oral Argument at 25:00-33:00. The government initially suggests that Plaintiff waived this argument because he

---

[7] Although Plaintiff should have received a reduced CRSC payment as of March 2017, the record reflects that he actually received a higher payment (based on a 70% VA disability rating) from March 2017 through October 2017. AR 792, 817. As a result, it appears that Plaintiff was actually "overpaid for eight months in a total amount of $4,000.56." AR 792. DFAS has indicated that no steps have been taken to collect this debt. *Id.* Likewise, it does not appear that the issue was brought to the attention of the ABCMR, even though it would be forbidden to act against the interest of Plaintiff. *See Doyle v. United States*, 220 Ct. Cl. 285, 311 (1979) ("It is clear the statute only confers on the Secretary [acting through correction boards] the power to correct records in favor of a serviceman and never against him.").

failed to raise it before the ABCMR.  Gov.'s MJAR at 24.  That argument is on solid legal ground because "[g]enerally, arguments not raised before the ABCMR are waived." *Pillette v. United* States, 675 F. App'x 1006, 1009 (Fed. Cir. 2017); *see also* AR 609 (ABCMR decision listing six requests by Plaintiff that do not include whether he has received the proper disability retirement benefit).  Regardless of whether the argument was waived, the Court can readily conclude that the supplement to the administrative record, ECF No. 102, provides clear evidence demonstrating that Plaintiff has received payment in accordance with the ABCMR's determination to adjust his pay grade to Major (O-4).  Therefore, Plaintiff has not shown that the Board erred.  *See Pope*, 16 Cl. Ct. at 641 ("When substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result.") (citations omitted).

For service members who are retired for permanent disability under 10 U.S.C. § 1201, retirement pay is calculated pursuant to 10 U.S.C. §§ 1401, *et seq*.  Under these provisions, Plaintiff's retirement "payment is determined by [his] monthly base pay at the time of separation and his combined disability rating."  *Mazarji*, 164 Fed. Cl. at 309.  To calculate the base pay for purposes of retirement pay, "the military will average the highest thirty-six months of basic pay." *Rempfer v. United States*, No. 23–56 C, 2023 WL 4399991, at *2 (Fed. Cl. July 7, 2023) (citing 10 U.S.C. § 1407); *see also* AR 829, 850–54 (referring to this calculation as the "High 36 Average").  It then multiplies the monthly base pay figure by the applicable multiplier from 10 U.S.C. § 1401(a), which provides that "the retired pay multiplier is either 2.5 percent times the years of service creditable for computing retired pay or the percentage of disability awarded by the military service at retirement."  DOD Financial Management Regulation Vol. 7B, Chap. 1, ¶ 2.3.1.  The product of the base pay and the multiplier yields the total monthly payment for a servicemember retired due to permanent disability.  10 U.S.C. § 1401(a); *see also Porter*, 131 Fed. Cl. at 561.

As explained in the record, Plaintiff was retired and placed on the TDRL effective July 15, 2015, at the rank of Captain with a 70% disability rating and calculated service time of 18 years, 2 months, and 28 days (for the purpose of determining disability pay).  AR 828–29.  On August 27, 2019, Plaintiff was removed from the TDRL and retired permanently with the same 70% Army disability rating.  AR 829–30.  Once the disability rating was determined, DFAS properly calculated Plaintiff's monthly disability payment based on "Method A," which is the product of Plaintiff's High-36 average multiplied by his disability percentage.  AR 829.  As of July 15, 2015, Plaintiff's High-36 average was $6,581.16.  *Id.*  Method A, or use of Plaintiff's disability rating as the applicable multiplier, ($6,581.16 x .70) yielded a monthly payment of $4,606.00[8] effective July 15, 2015.  AR 830.[9]

---

[8] Technically, the monthly payment calculation was $4.606.81, but that result is rounded down pursuant to DoD Financial Management Regulation, Vol. 7B, Chapter 3, ¶ 2.9.1.

[9] "Method B" required DFAS to take Plaintiff's High-36 average and multiply it "by the product of 2.5% times the retiree's years of service for disability retired pay."  AR 829–30.  This calculation resulted in a lower monthly payment for Plaintiff, so it was not used.  AR 289–330; *see also* 10 U.S.C. § 1401(b) ("If a person would otherwise be entitled to retired pay computed under more than one formula of the table . . ., the person is entitled to be paid under the applicable formula that is most favorable to him.").

Initially, Plaintiff's High-36 Average and his corresponding monthly retirement benefit were calculated based on his rank of Captain (O-3). AR 828–29. However, the ABCMR's Decision from August 2021 retired Plaintiff at the pay grade of a Major (O-4) effective September 25, 2015, which was several months after Plaintiff was placed on the TDRL. *See* ECF No. 40-1 at 11–12. Although the ABCMR was concerned that it was "'speculative,' to conclude he would have been issued promotion orders because he was not serving in a MAJ / O-4 position," the Board nonetheless "recommended relief be granted and that the applicant's DD Form 214 be corrected to reflect the retirement grade and rank of MAJ based on promotion selection." ECF No. 40-1 at 11. Later documentation reflected that DFAS adjusted its records in the payment system to reflect the change as of July 15, 2015, the day Plaintiff was placed on the TDRL, where he remained until he was retired permanently for disability. AR 830, 909. Although Plaintiff was now retired at Major (O-4), this designation had little practical effect on his permanent retirement payment:

> The change of his grade from Captain (O-3) to Major (O-4) as reflected in the corrected records resulted in the increase of his basic pay for one day (July 15, 2015), which was considered in computing his High 36 Average, which increased from $6,581.l6 to $6,581.75 . . . . The result was that the gross military retired pay being paid to him increased from $5,275.00 to $5,277.00 effective February 2022. This amount is arrived at by using the High 36 Average of $6,581.75 x 0. 70 (percentage of disability) = $4,607.22, rounded down to $4,607.00 for his gross retired pay entitlement upon retirement in July 2015. Cost of living adjustments that took effect after the July 2015 retirement date increased that amount to $5,277.00.

AR 831 (internal footnote omitted).

In short, because Plaintiff's pay grade was that of a Major effective July 15, 2015, the same day that he was placed on the TDRL, he was only paid as a Major (O-4) for one day of his High 36 Average. As a result, his retroactive increase in pay grade resulted in his monthly retirement payment increasing from $4,606.00 to $4,607.00. *Id.* Due to cost-of-living adjustments made after July 2015, Plaintiff's monthly payment with the greater High 36 Average was $5,277.00, compared to $5,275.00 without the one-day payment as a Major (O-4). *Id.* Therefore, even though Plaintiff mistakenly believes that he is not getting the correct disability retirement payment, the record reflects that DFAS has properly calculated and disbursed his disability retirement payment. AR 827–40.[10]

To the extent that Plaintiff seeks retroactive promotion to 2012 and associated backpay based on his eligibility to appear before the PVB, *see* Pl.'s MJAR at 14–16, that claim also fails. While Plaintiff was stationed at a training center in Kuwait, he applied for the September 2012

---

[10] Based on the ABCMR's 2021 decision that led to a slight increase in Plaintiff's High 36 Average, the Army owed Plaintiff a small sum of backpay, which it provided to Plaintiff. *See* AR 831 ("Additionally, it was determined that [Plaintiff] was owed $80.50 in retroactive military retired pay for the period July 16, 2015, to January 31, 2022, which was paid to him in February 2022."); *see also* AR 912.

PVB.[11]   AR 41, 438.  A representative from HRC informed Plaintiff that, to be considered for promotion by a PVB, he had to be off active duty within 120 days of the date on which the PVB would convene.  ECF No. 73-2 at 2–3; *see also* Army Regulation 135-155 ¶ 2-12(b)(2). Although given the opportunity to end his active duty service and appear before the PVB, Plaintiff opted to stay on active duty.  ECF No. 73-2 at 2.

The Board's February 2022 decision found that it "cannot retroactively promote [Plaintiff] to MAJ/04 as requested (either through a Position Vacancy Board or otherwise) because the ABCMR lacks the authority to promote officers and to do so would violate the Appointments Clause of the United States Constitution." AR 614.  Indeed, the ABCMR detailed Army Regulation 135-155 ¶ 2-12, which governs PVBs in the U.S. Army Reserve Troop Program.  AR 620–21.  The "PVB system is designed to promote officers to fill vacancies in [U.S. Army Reserve] units that cannot be filled by local commanders with qualified officers of the authorized grade."  Army Regulation 135-155, ¶ 2-12.  The applicable rules set the rules "to determine if a valid position vacancy exists," *id.* at ¶ 2-12(a), and also provides a litany of "promotion consideration eligibility requirements," *id.* at ¶ 2-12(b).  Additionally, the PVB's recommendations are statutorily required to be approved by the President.  *See* 10 U.S.C. § 12203(a) ("Appointments of reserve officers in commissioned grades of lieutenant colonel and commander or below . . . shall be made by the President alone."); *see also* 10 U.S.C. § 14111(a).

Like the ABCMR, the Court lacks authority to retroactively promote Plaintiff.  *See United States v. Testan*, 424 U.S. 392, 402 (1976) ("The claim, instead, is that each has been denied the benefit of a position to which he should have been, but was not, appointed.  The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it."); *see also Stein v. United States*, 121 Fed. Cl. 248, 278–79 (2015) ("Regardless, the court lacks the authority to promote plaintiff . . . .  '[i]t is well-settled that the promotion of military officers is not a power granted this court.'" (citing *Miller v. United States*, 119 Fed. Cl. 717, 730 (2015)).[12]  The Court finds that Plaintiff is receiving the proper retirement benefit and

---

[11] The government explains that reserve officers can either be promoted through the standard PSB or the less commonly used PVB.  Gov.'s MJAR at 5 n.3; *see also* Army Regulation 135-155 ¶¶ 2-11, 2-12.

[12] This case is similar to *Poole v. United States*, in which a member of the Virginia Army National Guard also did not timely leave active duty to pursue a promotion.  324 F. App'x 889 (Fed. Cir. 2009).  There, the plaintiff was actually promoted to Major in his reserve status, with eligibility beginning on September 22, 1993, but "he could not accept his promotion immediately without leaving active duty." *Id.* at 890.  Poole decided instead to remain on active duty until he was placed on the TDRL on November 1, 1996, and he was later permanently retired at the rank of Major.  *Id.*  The plaintiff sought retroactive promotion dating back to 1993, but the Court, after reviewing Army Regulation 135-155, explained that "[t]he effective date of promotion is the date the officer is eligible for pay and allowances"; therefore, the plaintiff's eligibility for Major pay began on November 1, 1996.  *Id.* at 891 (citing Army Regulation 135-155 ¶ 4-19 (1994)).  Likewise, here, for reserve vacancies, "[t]he effective date and date of promotion will be no earlier than the approval date of the board, the date of Senate confirmation (if required), or the date the officer is assigned to the position, whichever is later."  Army Regulation 135-155 ¶ 3-3(a)(2)(a).  As in *Poole*, these rules determine Plaintiff's promotion date, but even more problematic for Plaintiff, he was not even promoted by a PVB and did not go through the process at all.  Promoting Plaintiff to Major retroactively to July 2012 would require pure speculation by the Court that Plaintiff would meet the numerable criteria and gain the necessary approval of the PVB and the President.

that the ABCMR did not commit error in refusing to retroactively promote Plaintiff to Major effective July 2012.

### 3. The Board Did Not Err in Determining Plaintiff is Not Entitled to Retroactive Promotion and Back Pay Pursuant to 10 U.S.C. § 1372

Additionally, Plaintiff contends that he is eligible for retroactive promotion and backpay at the rank of Lieutenant Colonel as of September 2015. ECF No. 70 ("Am. Compl.") at 13, 17; Pl.'s MJAR at 14, 21; Oral Argument at 47:00-1:00:02. In its 2022 decision, the ABCMR considered whether Plaintiff was entitled to "[b]ackpay at the rank of [Lieutenant Colonel] under the provisions of Title 10, United States Code, section 1372 or 1375 from June 2015 to current." AR 609. It concluded that

> [t]he record is void of evidence that he was ever promoted to or was entitled to or eligible for promotion to LTC/O-5. Per regulation and law, an officer must meet the qualifications for promotion to LTC/O-5, including four years' time in grade as an MAJ/O-4. There is insufficient evidence that the applicant met the eligibility qualifications for this promotion.

AR 614. The government suggests that Plaintiff abandoned his request for backpay at the rank of Lieutenant Colonel in his response brief. ECF No. 92 at 2 n.1. However, during oral argument, Plaintiff contended forcefully that he was entitled to not only retroactive pay at the rank of Lieutenant Colonel pursuant to 10 U.S.C. § 1372(2), but also that he was entitled to similar backpay at the rank of Brigadier General under 10 U.S.C. § 1372(4). Oral Argument at 47:00-1:24:00.

Pursuant to 10 U.S.C. § 1372, a service member retired for medical disability or placed on the TDRL is entitled to be retired at the highest of the following:

> (1) The grade or rank in which he is serving on the date when his name is placed on the temporary disability retired list or, if his name was not carried on that list, on the date when he is retired.
> (2) The highest temporary grade or rank in which he served satisfactorily, as determined by the Secretary of the armed force from which he is retired.
> (3) The permanent regular or reserve grade to which he would have been promoted had it not been for the physical disability for which he is retired and which was found to exist as a result of a physical examination.
> (4) The temporary grade to which he would have been promoted had it not been for the physical disability for which he is retired, if eligibility for that promotion was required to be based on cumulative years of service or years of service in grade and the disability was discovered as a result of a physical examination.

Thus, clause (2) is relevant to Plaintiff's claim regarding to promotion to Lieutenant Colonel, and clause (4) is relevant to Plaintiff's claim regarding promotion to Brigadier General.

For purposes of clause (2) and Plaintiff's claim that he entitled to promotion to the rank of Lieutenant Colonel, "[t]he statute does not specify what constitutes the 'highest temporary grade or rank in which [a service member served] satisfactorily,' delegating to the Secretary of the Army the power to prescribe further regulations on the matter." *Rajpaul v. United States*, 150 Fed. Cl. 87, 92 (2020). Pursuant to Army Regulation 15-80 ¶ 3-2(a), the highest active duty grade "is the grade to which a Soldier was actually promoted and paid pursuant to a lawful promotion . . . . [It] does not include merely being in a promotable status or serving in, 'acting,' or holding a position or job title authorized at a higher grade, such as acting first sergeant or acting sergeant major." Therefore, because Plaintiff was not actually promoted to Lieutenant Colonel, the Court cannot find that the ABCMR erred when it concluded that Plaintiff was not eligible for retroactive retirement pay at the rank of Lieutenant Colonel. *See Smith v. Sec'y of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004) (the Military Pay Act, 37 U.S.C. § 204, "does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected" because "a service member is entitled only to the salary of the rank to which he is appointed and in which he serve[d]").

The Federal Circuit addressed a similar argument in *Campbell v. United States*, in which the plaintiff sought a higher retirement payment based on the fact that he "temporarily performed the duties of his former commander's colonel-designated position for several months." No. 2022-1382, 2022 WL 2824674 at *1 (Fed. Cir. July 20, 2022). Like Plaintiff, Campbell was never considered by a promotions board, and Campbell was medically retired at the rank of Lieutenant Colonel. *Id.* After Judge Coster Williams rejected Campbell's promotion claim because a promotion board never actually considered him before the Army medically retired him, the Federal Circuit affirmed:

> Here, Mr. Campbell argues that, under 10 U.S.C. § 1372, the highest grade at which he served was colonel. Section 1372 dictates what grade a service member is entitled to upon retirement for physical disability. Section 1372(2) specifies that a service member is entitled to "[t]he highest temporary grade or rank in which he served satisfactorily, as determined by the Secretary of the armed force from which he is retired." Mr. Campbell argues that because he temporarily performed the duties of a colonel-designated role, he is entitled to the grade of colonel upon retirement. We do not agree. Although "temporary grade or rank" is not expressly defined, context makes clear it refers to grades or ranks acquired by promotion. For example, § 1372(4) entitles a veteran to the temporary grade "to which he would have been promoted" but for his disability. 10 U.S.C. § 1372(4); *see also id.* § 1212(a)(D) (granting disability severance pay based on the "temporary grade or rank to which [the veteran] would have been promoted"). Temporarily performing the duties of a role authorized for a particular grade or rank is not the same as being promoted to that temporary grade or rank. Thus, while Mr. Campbell temporarily performed the duties of a colonel-designated position, he did not serve in the temporary grade or rank of colonel, as required by § 1372(2). That understanding is consistent with our well-established case law holding that in challenges to the military's decision not to promote a veteran, "the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which plaintiff was not selected." It also coincides with the Army's long-standing interpretation of the

14

similar term "highest grade served" to mean "[t]he highest grade to which an individual on active duty was actually and lawfully promoted and paid.  It does not include . . . serving in a position authorized a higher grade than actually held."  Mr. Campbell served in a position authorized a higher grade, but he was never actually lawfully promoted to colonel.  Therefore, he does not fall within § 1372(2).

*Id.* (citations omitted).[13]  In this matter, Plaintiff was also never lawfully promoted to Lieutenant Colonel and, therefore, like Campbell, 10 U.S.C. § 1372(2) does not apply.

At oral argument, Plaintiff seemed to suggest that he temporarily served at the rank of Lieutenant Colonel (like the plaintiff in *Campbell*).  Oral Argument at 57:00-1:03:20.  In support of this claim, he referred the Court to officer evaluation reports ("OERs") contained in the administrative record.  *See* AR 17–18.  However, neither the 2008-2009 OER nor other annual OERs support this claim.  AR 13–20.  Although the 2011-2012 and 2012-2013 OERs advised that Plaintiff should be promoted to Major, Plaintiff was never promoted to Major (he was retroactively given an increase in pay grade to Major by the ABCMR effective 2015).  AR 9–10, 13–14.  Regardless, even if he temporarily served at the rank of Major (with enough years to potentially become a Lieutenant Colonel) or briefly took a post that performed the duties of a Lieutenant Colonel, Plaintiff still cannot receive increased retirement pay pursuant to 10 U.S.C. § 1372(2).  *Campbell*, 2022 WL 2824674 at *2 ("Thus, while Mr. Campbell temporarily performed the duties of a colonel-designated position, he did not serve in the temporary grade or rank of colonel, as required by § 1372(2).").  Therefore, the ABCMR acted reasonably in finding that there was insufficient evidence that Plaintiff met the requirements for promotion to Lieutenant Colonel.  *See Rajpaul*, 150 Fed. Cl. at 93 ("The Board's conclusion that [the plaintiff] was not serving in a temporary grade of E-8 at the time of his separation is supported by substantial evidence, consistent with military regulations, and is reasonable in light of the evidence presented.  Therefore, the Court 'will not disturb the result.'" (citing *Pope*, 16 Cl. Ct. at 641)).

Similar reasons prevent Plaintiff from prevailing on his claim that he is entitled to retroactive promotion and backpay at the rank of Brigadier General.  Plaintiff asks the Court to make assumptions about the rank and grade he would have obtained if given the opportunity, Oral Argument at 1:05:20, but this is a step the Court cannot take.  In support of his Brigadier General argument, Plaintiff asserts that his entitlement to higher pay is based on clause (4).  This clause provides that a retirement grade can be as high as "[t]he temporary grade to which he would have been promoted had it not been for the physical disability for which he is retired, *if eligibility for that promotion was required to be based on cumulative years of service or years of service in grade* and the disability was discovered as a result of a physical examination."  10 U.S.C. § 1372(4) (emphasis added).

---

[13] In *Campbell*, the Federal Circuit also distinguished *Friestedt v. United States*, 173 Ct. Cl. 447 (1965), which Plaintiff cites in support of his 10 U.S.C. § 1372(2) argument, Am Compl. at 6, 9; Pl.'s MJAR at 8–9, 11, 20, 21.  *Campbell*, 2022 WL 2824674, at *3.  The circuit explained that "plaintiff in *Friestedt* was actually promoted to a higher rank before his release from active duty," whereas Campbell, like Plaintiff here, "was never promoted to colonel, temporarily or permanently."  *Id.* at *3.

But Plaintiff had not been selected, let alone nominated, for promotion to Lieutenant Colonel or Brigadier General at the time of his placement on the TDRL or his permanent retirement.  Standing alone, this prevents Plaintiff from prevailing on this claim.  *See Campbell*, 2022 WL 2824674, at *3 (finding the plaintiff did not "fall within § 1372(3) or (4) . . . [because] Mr. Campbell had not been selected for a permanent or temporary promotion before he was medically retired, so he would not have been promoted to colonel absent his physical disability.").  In addition to the fact that the Court cannot assume that Plaintiff would have been promoted if he had not become physically disabled, the rank of Brigadier General is not one which is "based on cumulative years of service or years of service in grade."  10 U.S.C. § 1372(4).  As a result, the Court must find that Plaintiff's claim for retroactive retirement at the rank of Brigadier General, although not specifically raised before the ABCMR, obviously must fail.

### 4.    The Board Did Not Err in Determining that Plaintiff is Ineligible for CRDP

Finally, Plaintiff contends that the Army and DFAS failed to correctly calculate his time in service.  Am. Compl. at 8, 10, 17; Pl.'s MJAR at 10, 21–22.  The administrative record shows that Plaintiff's qualified time in service for retirement purposes is 19 years, 3 months, and 13 days.[14]  *See, e.g.*, AR 631.  According to Plaintiff, DFAS should have added PDMRA leave days that he accrued to appropriately determine his base pay service time.  Pl.'s MJAR at 22; Oral Argument at 33:00-46:00.  Plaintiff contends that once his PDMRA days are added to his time in service, he will be eligible for CRDP and thus entitled to concurrent payments for medical retirement from the Army and disability from the VA.  Am. Compl. at 10, 17; Pl.'s MJAR at 22.[15]

CRDP, like the CRSC program in which Plaintiff participates, is a program that permits concurrent receipt of retirement payments from the Army and disability payments from the VA.  *See* 10 U.S.C. § 1414.  Authorized by the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No.108-136, 117 Stat. 1511–17 (2003), retirees were able to receive, "for the first time, actual concurrent receipt of retired pay and veteran disability compensation for retirees with at least a 50% disability."  March 2020 CRS Report at 8.  The statute authorizing CRDP, however, limits compensation by servicemembers who are medically retired pursuant to chapter 61 of title 10.  Those servicemembers retired due to permanent disability with less than 20 years of service, such as Plaintiff, are ineligible for CRDP, 10 U.S.C. § 1414(b)(2), while service members with 20 years of service or more are entitled to CRDP with an offset applied, 10 U.S.C. § 1414(b)(1).

---

[14] Plaintiff contends that this number should actually be 19 years, 3 months, and 27 days.  Pl.'s MJAR at 21.  However, regardless of whether Plaintiff or the Army is correct, as will be explained, this dispute regarding days of service does not make a difference for purposes of Plaintiff's PDMRA-based argument.
[15] Because Plaintiff is medically retired, the ABCMR concluded he is not eligible for CRDP.  AR 614.  However, as the Government points out in its cross-MJAR, this is not entirely correct—some military members retired pursuant to chapter 61 of title 10 are, in fact, entitled to CRDP.  *See* Gov.'s MJAR at 12 n.6; *see also* 10 U.S.C. § 1414(b)(1).  Nonetheless, the ABCMR's incorrect statement appears to be a harmless error.

Based on the record before it, the Court cannot find error in the portion of the ABCMR's February 2022 decision, which found Plaintiff was not entitled to CRDP as a medical retiree. *See* AR 614. The calculation of time served in the record demonstrates that Plaintiff is ineligible because he is a disability retiree with less than 20 years of service. AR 84; *see* 10 U.S.C. § 1414(b)(2); *see also* Defense Finance and Accounting Service, *Concurrent Military Retired Pay and VA Disability Compensation* (July 17, 2023) ("A member who was retired under Chapter 61 for disability and who did not have 20 years or more of service creditable under 10 U.S.C. § 1405, or 20 years of service computed under 10 U.S.C. § 12732 at the time of retirement, is not eligible to receive VA Disability Compensation and military disability retired pay concurrently.").

Although difficult to completely piece together, it appears that Plaintiff contends his time in service should be re-calculated to add additional leave he allegedly accrued pursuant to the PDMRA program. Pl.'s MJAR at 12–13. However, according to Plaintiff's own argument, these days of leave would not result in him having over twenty years of service. *Id.* For example, in his MJAR, Plaintiff contends that adding the PDMRA leave to his service time would only result in an additional 204 days of service. But 204 days of additional service is insufficient to increase his 19 years, 3 months, and 13 days of service to over 20 years of service as is required to be eligible for CRDP. In fact, according to Plaintiff's own calculations, adding the PDMRA leave only results in his service time increasing to 19 years, 10 months, and 5 days. AR 641. Therefore, even if Plaintiff was correct that he should have received service credit for his PDMRA leave, it still would not take him across the required 20 years of service threshold to be eligible for CRDP.[16] Accordingly, the Court cannot find that the Board erred in not correcting Plaintiff's record to make him eligible for CRDP.[17]

---

[16] Originally, Plaintiff's PDMRA argument was mixed in with an argument regarding his eligibility for Temporary Early Retirement Authority (TERA). However, Plaintiff's TERA argument does not help his PDMRA argument. As the government notes, "[t]he ABCMR did not make a specific finding regarding the calculation of MAJ (RET) Hutchinson's time in active service and whether that calculation would render him eligible for the Temporary Early Retirement Authority (TERA), as it found he was entirely ineligible for TERA due to his medical retirement." Gov.'s MJAR at 3. Because the ABCMR correctly decided that Plaintiff is ineligible for TERA, AR 614; Gov.'s MJAR at 20–22, and Plaintiff acknowledged that any claim regarding TERA was moot, Oral Argument at 33:00, Plaintiff's TERA argument does not enhance his PDMRA-related claims. Plaintiff also advised that any claims arising under 10 U.S.C. §§ 1372(3) and 1375 were likewise moot. Oral Argument at 7:30-11:15.

[17] Furthermore, Plaintiff is ineligible for CRDP because he is already receiving CRSC, a different mechanism by which he can receive both medical retirement and VA benefits. *See* 10 U.S.C. § 1414(d)(1). According to 10 U.S.C. § 1414(d)(1), even if Plaintiff was entitled to CRDP in addition to CRSC, he may only receive one form of the special concurrent compensation. *See also* DoD Financial Management Regulation Vol. 7B, Ch. 63 ¶ 3.2 ("The law states that a member eligible for both CRSC . . . and CRDP . . . may not receive both, but must elect which compensation to receive."). By statute, if Plaintiff is eligible for both CRSC and CRDP, he must make an election to receive one, 10 U.S.C. § 1414(d)(1), but annually there is an open season in which a servicemember may change this election, 10 U.S.C. § 1414(d)(2).

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is **DENIED** and the government's cross-motion is **GRANTED**.  In addition, Plaintiff's motion for summary judgment, ECF No. 73, and his motion for a hearing, ECF No. 107, are both **DENIED** as moot.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.


s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge

18